Julian **CARRILLO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. A14–92–01228–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 6, 1994.

**502**

Ellen L. Shelton, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

**OPINION**

ELLIS, Justice.

Appellant, Julian Carrillo, appeals his judgment of conviction for the offense of murder. *See* TEX.PENAL CODE ANN. § 19.02 (Vernon 1989). The jury rejected his not guilty plea and after finding the two enhancement paragraphs of the indictment to be true, assessed punishment at seventy-five (75) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

Appellant arrived at Eastwood Park in the 1000 block of Harrisburg, Houston, in the early afternoon of September 8, 1991. Appellant had consumed "about five" beers before arriving at Eastwood Park. Once there,

appellant joined some friends at a picnic table. The deceased, Leonard Garcia, sat at a nearby table, drinking beer and eating chicken.

Appellant joined the deceased at his table and while there accidentally broke the deceased's beer bottle. Deceased demanded that appellant replace the beer, which appellant did. However, an argument ensued between the two men. According to the testimony of witnesses at trial, appellant caused the argument when he attempted to take a piece of the deceased's chicken. According to appellant, however, the argument began when the deceased claimed that appellant broke two bottles of beer and threatened to take his money if appellant did not buy the deceased another bottle. Appellant testified further that deceased called him a very offensive Spanish name, which is incapable of translation.

Appellant also testified that deceased threatened him with the broken bottle and fearing that he would be cut, appellant removed the knife that he had in his pocket and struck out at the deceased. Other witnesses at the scene, however, testified that the deceased neither grabbed the broken bottle nor threatened appellant prior to the stabbing.

After the stabbing, appellant left the park but was followed by witnesses to the stabbing who caught and beat appellant, causing injuries which required hospitalization. Decedent was also taken to the hospital, where he died from the stab wounds.

Appellant asserts two points of error. First, appellant claims that the trial court erred in failing to give a requested jury charge on the lesser included offense of voluntary manslaughter. Appellant's second point of error is that the trial court erred in denying appellant's motion to quash the jury panel based on the state's use of peremptory challenges to remove jurors based on the jurors' race.

■ At trial, counsel for appellant objected to the court's proposed jury charge because it did not include a charge on the lesser included offense of voluntary manslaughter. The trial court overruled this ob-

jection and submitted its charge without a voluntary manslaughter charge. In his first point of error, appellant contends that the trial court erred in failing to give the requested jury charge on the lesser included offense of voluntary manslaughter.

■■■ Whether a jury charge on a lesser included offense is required is a two-step analysis. First, the lesser offense must be included within the proof necessary to establish the charged offense and second, there must be some evidence that would allow the jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex. Crim.App.1993), *cert. denied,* — U.S. —, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The law is clear in Texas that when evidence from any source raises the issue of a lesser included offense, it must be included in the court's charge. *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim.App.1986). Also, the credibility of the evidence or the presence of conflicting evidence is not to be considered when determining whether a jury instruction is required. *Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984). However, the law is equally clear that "unless there is some evidence of sudden passion in the case, voluntary manslaughter cannot be considered a lesser included offense of murder." *State v. Lee,* 818 S.W.2d 778, 782 (Tex.Crim.App. 1991). The court is not required to charge on an issue not raised by the evidence. *Nance v. State,* 807 S.W.2d 855, 860 (Tex.Civ. App.—Corpus Christi 1991, pet. ref'd).

Appellant contends that there was evidence introduced at trial showing that he was guilty only of voluntary manslaughter. A person commits the offense of voluntary manslaughter when he causes the death of another under circumstances that would constitute murder, except he caused the death under the immediate influence of sudden passion arising from adequate cause. TEX.PENAL CODE ANN. § 19.04.

Appellant contends that there was testimony at trial which established a question of whether appellant acted under "sudden passion" which arose from "adequate cause." Specifically, appellant points to the fact that both appellant and deceased were drunk, appellant asked the deceased to leave him alone prior to the stabbing and appellant and deceased argued. Furthermore, appellant broke deceased's beer bottle and after appellant replaced the broken bottle, the deceased accused him of breaking two bottles. Additionally, after appellant and deceased argued, deceased threatened to take appellant's money, threatened him with a broken bottle and called him a very offensive Spanish name.

The record also reflects that when asked what appellant believed deceased was going to do with the broken beer bottle, appellant answered, "I'm pretty sure he was going to cut me with it." When asked the same question later, appellant answered again "I thought he (deceased) was going to cut me. You know, I have been cut before with bottles and I'm not going to take no more chances." Appellant also testified that deceased looked "like he was mad."

■■■ Appellant's evidence of "sudden passion" boils down to the fact that appellant and deceased argued about the number of broken beer bottles, the deceased called him a very offensive Spanish name, and appellant was "pretty sure" the deceased would cut him with the broken glass. However, "[n]ot all testimony of anger or fear entitles a defendant to a voluntary manslaughter charge." *Nance,* 807 S.W.2d at 860.

■■■ Unless there is evidence of actual subjective sudden passion arising from an adequate cause, a defendant is not entitled to a jury instruction on the lesser included offense of voluntary manslaughter. *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App. 1985). Furthermore, a "bare claim" of fear does not demonstrate sudden passion; fear that demonstrates sudden passion must be that which commonly produces a degree of terror "sufficient to render the mind incapable of cool reflection." *Daniels v. State,* 645 S.W.2d 459, 460 (Tex.Crim.App.1983); *see also* TEX.PENAL CODE ANN. § 19.04(c).

■■■ Before the issue of voluntary manslaughter is raised, the evidence must demonstrate that the actor is in the throes of actual, subjective passion. *Smith v. State,* 721 S.W.2d 844, 854 (Tex.Crim.App.1986)

(defendant "scared to death" insufficient to demonstrate sudden passion); *Gonzales v. State,* 717 S.W.2d 355, 356–57 (Tex.Crim.App. 1986) (defendant's claim that he was scared of the victim insufficient to raise issue that he was enraged, resentful, terrified or emotionally aroused immediately prior to shooting); *Ojeda v. State,* 712 S.W.2d 742, 743 (Tex.Crim.App.1986) (whether defendant cool and collected in defending himself or enraged at being hit and seeing girlfriend hit not shown by testimony); *Daniels,* 645 S.W.2d at 460 (defendant's fear that deceased would kill him did not produce a degree of terror sufficient to render the mind incapable of cool reflection); *Lopez v. State,* 716 S.W.2d 127, 129 (Tex.Civ.App.—El Paso 1986, pet. ref'd) (defendant had been drinking, was crying and mad, feared being shot at or run over by victim; evidence did not demonstrate sufficient level of sudden passion); *Stahl v. State,* 712 S.W.2d 783, 787–88 (defendant and deceased both drinking; during an argument, deceased grabbed defendant's gun and pointed it at defendant, yelling, "If I don't kill you, my cousin will" insufficient to raise issue of voluntary manslaughter); *Wolford v. State,* 675 S.W.2d 530, 533 (Tex.Civ.App.—Houston [14th Dist.] 1983, pet. ref'd) (record does not indicate that appellant acted because of fear that rose to the level of terror sufficient to render his mind incapable of cool reflection.).

In all of these cases, the record is devoid of any evidence that the appellant's emotional state ever rose beyond a "bare claim of fear" or was so strong and overpowering that it rendered him incapable of rational thought and collected action, as required for a jury instruction on voluntary manslaughter. Neither was there such evidence in the present case. In fact, appellant never even testified that he was ever mad or scared, and the record does not reflect that appellant ever acted with "passion" of any kind or was ever incapable of rational thought. In fact, there is testimony that after stabbing the deceased, appellant thought to clean the blood off his knife by wiping it on the grass before walking away. Because there is no evidence indicating the right to a jury charge on voluntary manslaughter, appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in denying appellant's motion to quash the jury panel based on the state's use of peremptory challenges to remove jurors based on the jurors' race. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). When determining the validity of a *Batson* claim, the standard of review is clear error. *Vargas v. State,* 838 S.W.2d 552, 554 (Tex. Crim.App.1992); *Wright v. State,* 832 S.W.2d 601, 604 (Tex.Crim.App.1992). To determine whether the trial court's decision is clearly erroneous, we must look to the record to see whether we are left "with the definite and firm conviction that a mistake has been committed." *Id.*

The record in this case shows that the state's attorney exercised five peremptory challenges against black veniremembers, four against white veniremembers and one against a Hispanic veniremember. After appellant's counsel objected that the state used its strikes in violation of *Batson,* the court reviewed the list of the state's challenges, found that appellant had established a prima facie case of racially motivated strikes and ordered a *Batson* hearing. During the hearing, the prosecutor gave the following reasons for striking the six minorities from the panel:

Tabatha Creeks, a Black woman: (1) thought rehabilitation was a more important punishment objective than deterrence or retribution; (2) seemed disturbed by the fact that she would have to serve as a juror until at least 3:00 p.m. and when the announcement was made she rolled her eyes; and (3) seemed to have a bad attitude.

Marie Hopkins, a Black woman: (1) thought rehabilitation was the most important punishment objective; (2) seemed "a little bit slow" because of the way in which she asked a question; and (3) nodded her head for both the maximum and minimum punishment, seeming "wishy-washy."

Carl Nickerson, a Black man: (1) thought rehabilitation was the most important punishment objective; and (2) was unemployed.

Cleo Mitchell, a Black man: (1) left some boxes on his juror information form blank; and (2) had an uncle charged with robbery. Elizabeth Ramirez, a Hispanic woman: (1) thought rehabilitation was the most important punishment objective; and (2) seemed timid.

Sandra Calloway, a Black woman: (1) works as a probation officer and the prosecutor felt that she would be sympathetic to the defendant.

On cross-examination, appellant's counsel focused primarily on the state's strike of Elizabeth Ramirez, and attempted to impeach the state's attorney with a comparative analysis between Mrs. Ramirez and Delores Koonz, a white veniremember whom the State did not strike. Mrs. Koonz, like Mrs. Ramirez, stated that she believed rehabilitation was the most important punishment objective. The state's attorney explained that she did not strike two people who answered in this manner: Mrs. Koonz and a Hispanic veniremember, Ernesto Reguesa. The prosecutor testified that she preferred Mrs. Koonz over Mrs. Ramirez not because of race, but because Mrs. Koonz appeared to be about fifteen years older and was a librarian. The state's attorney further testified that Mrs. Koonz appeared to be a strong person who would have little sympathy for the appellant once she heard about his prior criminal record. In contrast, Mrs. Ramirez appeared almost "timid."

After considering the prosecutor's explanations and making several inquiries, the trial judge concluded that while the strike of Mrs. Ramirez was "borderline," the prosecutor offered sufficient race-neutral reasons for her strikes and denied appellant's motion to quash the panel.

After reviewing the record using the clear error standard, we are not left with the "definite and firm conviction" that the trial court's decision was erroneous. Appellant's second point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.