**Robert CRUNK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–93–00885–CR, 14–93–00886–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 17, 1996.

Robert A. Morrow, Spring, for appellant.

Dan McCrory, Diane Lynn Glaeser, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

YATES, Justice.

A jury convicted appellant of murder and attempted murder. The trial court assessed punishment, enhanced by prior convictions,

at forty-five years confinement for the murder conviction and twenty years confinement for the attempted murder conviction in the Texas Department of Criminal Justice–Institutional Division. In three points of error, appellant alleges the trial court erred by (1) refusing his requested charge on conflicting factual issues; (2) admitting an unlawfully obtained document; and (3) refusing a requested charge on the lesser-included offense of voluntary manslaughter. We affirm.

## Factual & Procedural Background

Appellant shot Ronald Kubeckza and Richard May in their home. Ronald Kubeckza was killed. May, although critically injured, retrieved his gun, and fired back at appellant. As appellant fled, May followed him outside and fired several more shots, striking appellant's van. May then called for emergency assistance. While waiting for help to arrive, May circled appellant's name in his address book with blood from his wounded finger so that the police would know, if he were to die from his injuries, that it was appellant who shot him.

Appellant abandoned the van, and returned to his residence where he took a car belonging to his roommate, Shelley Hutchinson. He fled to Alabama in the car. The following day, Hutchinson reported her car stolen.

Based on May's entry in the address book, and telephone records supplied by the phone company, the police located appellant's residence. There, the investigative officers met Hutchinson and Greg Castro, another roommate. The officers discussed the car theft with the roommates, and recovered a sheet of legal paper ("the list") upon which appellant had inscribed the names of seven persons, and had made notations concerning property and money attributable to each person. Hutchinson and Castro told the officers that appellant had joked about robbing two of the

persons named on the list, one of which was May. After obtaining the roommates' written consent, the officers searched appellant's room.

Hutchinson and Castro also confirmed that appellant owned a van matching the description of the van in which appellant fled from May's house. A short distance from appellant's residence, the police recovered the van riddled with bullet holes.

Appellant was arrested in Mobile, Alabama. The gun in his possession was identified as the same gun from which the bullets were fired that murdered Kubeckza and injured May.

## Article 38.23

In his first two points of error, appellant challenges the admissibility of the list under Article 38.23 of the Texas Code of Criminal Procedure, and the court's refusal to submit this issue to the jury for their determination. We will first consider whether the list was admissible.

■ Appellant contends the trial court violated Article 38.23 by denying his motion to suppress the list because Hutchinson unlawfully obtained the list before tendering it to the police. Article 38.23 forbids the admission of evidence obtained in violation of any state or federal law in a criminal trial. Tex. Code Crim. Proc. Ann. art. 38.23.[1]

■ The trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony at a hearing on a motion to suppress evidence. *DuBose v. State,* 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The trial judge is also the initial arbiter of the legal significance of those facts. *Id.* Therefore, if the record supports the trial court's findings, an appellate court is not at liberty to disturb them, and on appellate

---

1. Article 38.23(a) provides as follows:

   No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution of laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

   In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.1996).

review, we address only whether the trial court properly applied the law to the facts. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim.App.), *cert. denied*, — U.S. ——, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

Appellant moved to suppress the list. At a hearing on the motion, the State called Sergeant Belk, Hutchinson and Castro. Sgt. Belk testified that prior to signing a written consent to search appellant's room, Hutchinson gave him the list. The officer further testified Hutchinson said she got it while "snooping around trying to find out as much information on the guy that stole her car."

Hutchinson, on the other hand, testified that although she could not specifically remember when the list was obtained, she thought the police officer recovered the list from appellant's bedroom after she gave her consent. She stated that prior to signing the consent form she called the owner of the house, who also resided there, to "make sure it was okay." Hutchinson also stated she did not have permission to go into appellant's room.

Castro testified unequivocally that the officers' search of appellant's bedroom was conducted with his and Hutchinson's consent, and that the list was obtained during the officers' search.

Appellant also testified at the hearing. He stated when he left Houston, it was his intent to return to his residence. He also stated he kept the list in his dresser drawer, and considered it private. All of the testimony concerning the recovery of the list was later repeated in the presence of the jury.

After the hearing, the trial court denied appellant's motion and submitted in part the following Findings of Fact:

1. On July 7, 1991, the defendant shot Richard May and shot and killed Ronnie Kubeckza.

2. The defendant fled the State of Texas approximately 24 hours later, leaving behind his personal belongings at a residence he shared with Shelley Hutchenson [sic], Greg Castro and Tony Gonzales.

3. The defendant was delinquent in his rent at the time he fled the State of Texas.

4. On July 8, 1991, officers went to the defendant's residence and met with Greg Castro and Shelly Hutchenson [sic].

5. On July 8, 1991, Shelly Hutchenson [sic] and Greg Castro tendered to police a list of paper in the defendant's writing which listed several names with various property and values next to the names (State's Exhibit # 103).

6. On July 8, 1991, Shelley Hutchenson [sic] and Greg Castro further signed a consent to search which allowed police to search the defendant's residence and room.

The court also submitted in part the following Conclusions of Law:

5. The defendant did not have a reasonable expectation of privacy in the room in the residence in which he was staying at the time of the offenses as he had clearly abandoned the premises with no intention of returning.

6. Shelly Hutchenson [sic] and Greg Castro could validly consent to search of the house and the room of the house that the defendant resided in at the time of the offenses.

7. Shelly Hutchenson [sic] and Greg Castro could lawfully turn over to [sic] officer personal property owned by the defendant.

8. The defendant had no right to complain of any search of his room as he had clearly abandoned the premises.

9. The seizure of the piece of paper (State's Exhibit 103) was not the result of an unlawful search and seizure.

Appellant challenges the trial court's legal conclusion that Hutchinson and Castro could lawfully turn over appellant's personal property because such a conclusion implies that Hutchinson lawfully acquired the list. Appellant contends the evidence shows the contrary, namely, that Hutchinson, and possibly Castro, committed theft or criminal trespass by removing the list from appellant's room without his permission. Appellant asserts the trial court reached its erroneous conclusion because it improperly applied the constitutional concepts of abandonment and reasonable expectation of privacy to the actions

of private persons, instead of applying the penal code.

■ Constitutional protections against warrantless searches apply to searches conducted under governmental authority, and not to the actions of private individuals. *Tin Man Lee v. State*, 773 S.W.2d 47, 48 (Tex. App.—Houston [1st Dist.] 1989, no pet.); *King v. State*, 746 S.W.2d 515, 518 (Tex. App.—Dallas 1988, pet. ref'd). Evidence obtained by the State in violation of the Fourth Amendment may be suppressed, whereas evidence illegally obtained through a search by a private citizen may be admissible. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *Nelson v. State*, 607 S.W.2d 554, 555 (Tex.Crim.App. [Panel Op.] 1980); *Gillett v. State*, 588 S.W.2d 361, 363 (Tex.Crim.App.1979) (en banc). *See also Brimage v. State*, 918 S.W.2d 466, 479 n. 14 (Tex.Crim.App.1994).

■ The capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded space. *Franklin v. State*, 913 S.W.2d 234, 240 (Tex.App.—Beaumont 1995, pet. ref'd) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Generally, no Fourth Amendment seizure occurs when police take possession of abandoned property because there is no legitimate expectation of privacy in abandoned property. *See Hawkins v. State*, 758 S.W.2d 255, 257 (Tex.Crim.App.1988); *O'Shea v. State*, 740 S.W.2d 527, 528 (Tex.App.—Houston [14th Dist.] 1987, no pet.). The reasonableness of a defendant's expectation of privacy for purposes of challenging a search by the police is a question of fact. *Johnson*, 896 S.W.2d at 285.

■ On the other hand, Texas affords a defendant greater protection than federal constitutional provisions as to evidence unlawfully obtained by the State or any person. *Gillett*, 588 S.W.2d at 367 (Roberts, J. dis-

senting). Article 38.23 requires the exclusion of evidence obtained by an officer or *other person* in violation of any constitutional provision or law of the United States or Texas. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1996) (emphasis added).[2] Moreover, other than good faith, there are no exceptions to Article 38.23. *Garcia v. State*, 829 S.W.2d 796 (Tex.Crim.App.1992).

■ If evidence is challenged under Article 38.23 on the ground that it was wrongfully obtained by a private person in a private capacity, the defendant must establish that the private person obtained that evidence in violation of a provision of the constitution or law of either Texas or the United States. *Carroll v. State*, 911 S.W.2d 210, 219 (Tex. App.—Austin 1995, no pet.). Therefore, in determining the admissibility of the list under Article 38.23, the threshold question before this court is whether appellant established that Hutchinson or Castro violated the law in acquiring the list. Although the trial court apparently analyzed the legality of the private search under federal constitutional standards, the trial court's reasoning is irrelevant, so long as *any* theory articulated by the State supports the legality of the search. *Brimage*, 918 S.W.2d at 479 (emphasis in original).

Contrary to appellant's assertions, the record does not reflect that Hutchinson or Castro committed theft. A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of the property." TEX. PENAL CODE ANN. § 31.03 (Vernon 1989). "Deprive" means to "withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of that property is lost to the owner." *Id.* § 31.01(3)(A). The evidence in this case does not support a finding that either Hutchinson or Castro had the intent to deprive appellant of the list because the list was given to the police to facilitate the investigation of a crime. *See*

---

**2.** The Texas Court of Criminal Appeals recently indicated that whether Article 38.23 requires exclusion of evidence illegally obtained through a search by a private citizen is "by no means certain." *Brimage*, 918 S.W.2d at 479, n. 14. However, because the statutory language appears to be specific, and because there is contrary authority, *see e.g. Hill v. State*, 641 S.W.2d 543, 544 (Tex.Crim.App.1982), we will assume for purposes of this opinion that the statute applies to evidence illegally obtained in searches by private citizens.

*Stone v. State,* 574 S.W.2d 85, 88–89 (Tex. Crim.App.1978) (finding that the act of turning over property to facilitate investigation of crime negates the inference of intent to deprive owner of property where effect of act is to facilitate return of property if the police did not find the property to be evidence of a crime).

Alternatively, appellant argues that Hutchinson committed the offense of criminal trespass by entering appellant's room without his permission. This specific argument was not raised in the court below; thus, whether this issue was properly preserved for appeal is questionable. In any event, we have found no authority, and appellant cites none, for the proposition that a roommate commits the offense of criminal trespass by entering an unlocked bedroom in the house she shares with three other individuals.[3] In fact, Texas cases indicate the contrary. *See e.g. Palmer v. State,* 764 S.W.2d 332, 334 (Tex.App.—Houston [1st Dist.] 1988, no pet.) (noting that joint ownership is a defense to criminal trespass); *Arnold v. State,* 867 S.W.2d 378, 379 (Tex.Crim.App.1993) (noting that trespass statute requires only that defendant enter and remain on property *of another* ) (emphasis in original).

Likewise, a review of cases from other states fails to support appellant's theory that Hutchinson is guilty of trespass. *See e.g. People v. Gauze,* 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365 (1975) (holding where defendant entered apartment he shared with two others he could not be guilty of breaking and entering the property *of another* ) (emphasis in original); *Wesolic v. State,* 837 P.2d 130 (Alaska App.1992) (holding that defendant who rented room in private house unlawfully entered *locked* rooms that owner had reserved in lease for private use) (emphasis added); *People v. Smith,* 144 A.D.2d 600, 534 N.Y.S.2d 1021 (2 Dept.1988) (holding that defendant who entered *locked* bedroom of co-tenant did so unlawfully) (emphasis added).

We find that under the facts of this case, Hutchinson did not commit the offense of criminal trespass. Therefore, the trial court did not err in finding that the list was obtained lawfully, and in denying appellant's motion to suppress.

Appellant also maintains that the trial court erred in refusing a requested jury instruction pursuant to Article 38.23 because the evidence raised a fact issue regarding whether the list was lawfully obtained. Where the legal evidence raises an issue on the lawfulness of a search or arrest under the federal or state constitution, the trial court must instruct the jury on the issue of the lawfulness of the search or arrest. TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1996); *Stone v. State,* 703 S.W.2d 652 (Tex.Crim.App.1986). A trial court is required to include a properly worded Article 38.23 instruction only if there is a factual dispute as to how the evidence was obtained. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex. Crim.App.1986).

In spite of an apparent factual dispute as to how the list was obtained, the State maintains the trial court did not err in denying the requested jury instruction because the list was admissible under either factual scenario. Specifically, the State argues that the list was admissible for the purpose of impeaching appellant's testimony. Alternatively, the State argues that the list was admissible because appellant had abandoned the contents of his room, including the list. We agree that the trial court did not err in refusing the requested jury instructions, but for reasons other than those articulated by the State.

A trial court is not required to give an Article 38.23 instruction where the objection to the evidence requires a legal, rather than a factual determination. *Sharp v. State,* 495 S.W.2d 906, 908 (Tex.Crim.App. 1973) *judgment vacated on other grounds by Sharp v. Texas,* 414 U.S. 1118, 94 S.Ct. 854, 38 L.Ed.2d 746 (1974); *Morgan v. State,* 906

---

3. A person commits criminal trespass if she enters or remains on property or in a building *of another* without effective consent, and she had notice that (1) entry was forbidden; or (2) received notice to depart but failed to do so. TEX.

PENAL CODE ANN. § 30.05 (Vernon Supp.1994) (emphasis added). "Another" is defined as a person other than the actor. TEX. PENAL CODE ANN. § 1.07(4) (Vernon Supp.1994).

S.W.2d 620, 625 (Tex.App.—Fort Worth 1995, pet. ref'd), *cert. denied,* —— U.S. ——, 117 S.Ct. 174, —— L.Ed.2d —— (1996); *Poulos v. State,* 799 S.W.2d 769, 772 (Tex.App.—Houston [1st Dist.] 1990, no pet.). Although a fact issue was raised here concerning how the list was obtained, the jurors' resolution of that issue would neither render the list inadmissible, nor result in a determination that it was unlawfully obtained. *See Thomas,* 723 S.W.2d at 707. In other words, because Hutchinson did not obtain the list unlawfully, the list was admissible and a finding by the jury that Hutchinson obtained the list would be irrelevant. Likewise, because there was no dispute that the police officers' search was consensual, their search of appellant's room was lawful.[4] Thus, a finding by the jury that the police obtained the list would have also been irrelevant.

### Lesser Included Offense

■■■■ In his third point of error, appellant contends the trial court erred in the murder case by refusing to submit to the jury the lesser-included offense of voluntary manslaughter. When deciding whether to submit an instruction on a lesser-included offense, the trial court employs a two-step analysis under *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981); *see also* TEX.CODE CRIM. PROC. ANN. art. 37.09(1). The first prong of the *Royster* test requires that the lesser-included offense be within the proof necessary to establish the offense charged. *Id.* at 446. The second prong requires some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993) (clarifying *Royster* as to the rational findings of the jury). In determining whether some evidence in the record supports the charge of

possession of drug paraphernalia, we review all the evidence presented at trial. *Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App. 1989) (op. on reh'g); *Bell v. State,* 693 S.W.2d 434, 442 (Tex.Crim.App.1985). The credibility of the evidence and whether it conflicts with other evidence is not to be considered. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992) (per curiam).

■■■■ A person commits the offense of voluntary manslaughter when he causes the death of another under circumstances that would constitute murder, except he causes the death under the immediate influence of sudden passion arising from adequate cause. TEX. PENAL CODE ANN. § 19.04. Voluntary manslaughter may be a lesser-included offense of murder if there is some evidence of sudden passion in the case. *State v. Lee,* 818 S.W.2d 778, 782 (Tex.Crim.App.1991); *Carrillo v. State,* 889 S.W.2d 501, 503 (Tex. App.—Houston [14th Dist.] 1994, no pet.). A "bare claim" of fear does not demonstrate sudden passion. Fear that demonstrates sudden passion must be that which commonly produces a degree of terror "sufficient to rend the mind incapable of cool reflection." *Daniels v. State,* 645 S.W.2d 459, 460 (Tex. Crim.App.1983); *Carrillo,* 889 S.W.2d at 503; TEX. PENAL CODE ANN. § 19.04(c). "Unless there is evidence of actual subjective sudden passion arising from an adequate cause, a defendant is not entitled to a jury instruction on the lesser-included offense of voluntary manslaughter." *Carrillo,* 889 S.W.2d at 503 (citing *Bradley v. State,* 688 S.W.2d 847, 851 (Tex.Crim.App.1985)).

Appellant contends that his testimony at trial established a question of whether he acted under "sudden passion" which arose from "adequate cause." In summary, appellant testified that during a routine drug transaction, he complained to May that he was being shorted and threatened to take his

---

**4.** Appellant contends the jury should have been allowed to decide whether the roommates had authority to consent to the search of appellant's bedroom. Third persons can consent to searches when they exercise control over and have authority to use the premises being searched. *Lowery v. State,* 499 S.W.2d 160, 165 (Tex.Crim.App. 1973). An individual has the capacity to consent to the search of an apartment if they have the

right to use and occupy the apartment. *Id.* at 166. No issue was raised as to Hutchinson or Castro's authority to consent, thus there was no factual dispute for the jury to resolve. *See Stephenson v. State,* 494 S.W.2d 900, 904 (Tex.Crim. App.1973) (a finding of consent is a mixed question of law and fact and *conflicts* in testimony are best resolved by trier of fact) (emphasis added).

business elsewhere. May began to shout obscenities to him, pointed a gun at him, and threatened to kill him. When appellant tried to defend himself against May, May called to Kubeckza to "get him." Appellant feared violence because he knew the pair had threatened violence in the past, and because he could not see whether Kubeckza had a gun. Appellant contends this testimony raises more than a bare claim of fear and is sufficient to support a finding that he was acting under the immediate influence of sudden passion.

To the contrary, appellant's testimony indicates that his actions were the result of cool reflection and not sudden passion. Appellant testified that May was shaking, red and inflamed when threatening him. When asked how he felt when May initially pointed the gun at him, appellant said, "I didn't know what to think." But later he said, "I thought I was going to die." Appellant put his hands up and said to May, "Hey, man, put up the gun. We can talk this out." When May refused, appellant started looking for a place to run, and began to think about his options. There was no way out, and appellant feared for his life so he told May, "All right, man. I'll give you the money." He reached into his pockets like he was getting the money and pulled out a gun and shot May.

Because there is no evidence that appellant acted with sudden passion, he was not entitled to an instruction on the lesser included offense of voluntary manslaughter. Point of error number three is overruled.

Accordingly, the judgment of the court below is affirmed.