In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00167-CR


______________________________




DAVID APONTE, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Criminal Court at Law No. 14


Harris County, Texas


Trial Court No. 1058805




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 David Aponte appeals his conviction for misdemeanor criminal mischief. The trial court
sentenced him to the maximum available term, one year in county jail. The record reflects that
Aponte pleaded guilty as part of a plea bargaining agreement, which the trial court accepted. Further,
despite a statement in the judgment that Aponte had waived counsel, it is otherwise clear from the
record that he was represented by appointed counsel. 

 Aponte states in his Notice of Appeal that the trial court denied him permission to appeal,
but that he seeks to show on appeal that his plea was involuntary because of ineffective assistance
of counsel.

 The first issue is whether we have jurisdiction to consider Aponte's appeal. The record does
not show that Aponte raised his issues by a pretrial written motion or that he has the trial court's
permission to appeal. We recently addressed this situation in Lenox v. State, No. 06-00-00246-CR,
2001 WL 928609 (Tex. App.-Texarkana Aug. 16, 2001, no pet. h.). In that opinion, we reviewed
the background of Tex. R. App. P. 25.2 and Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon 1979),
the rule and statute that restrict the availability of appeal in situations involving a plea bargaining
agreement.

 An appellant invokes the jurisdiction of this court by filing a written Notice of Appeal. 
Lemmons v. State, 818 S.W.2d 58, 60 (Tex. Crim. App. 1991) (citing Carter v. State, 656 S.W.2d
468, 469 (Tex. Crim. App. 1983)). But as the Texas Court of Criminal Appeals acknowledged in
Davis v. State, 870 S.W.2d 43, 46 (Tex. Crim. App. 1994), and Jones v. State, 796 S.W.2d 183,
186-87 (Tex. Crim. App. 1990), the extent of our jurisdiction can be limited by legislation. Article
44.02 represents such a limitation in a plea-bargained misdemeanor appeal. Lenox, 2001 WL
928609, at *4.

 We are without jurisdiction to consider the voluntariness of Aponte's plea. In Cooper v.
State, 45 S.W.3d 77 (Tex. Crim. App. 2001), the Texas Court of Criminal Appeals construed 
Rule 25.2(b)(3) as being in harmony with the proviso portion of Article 44.02. The court held that
both Article 44.02 and Rule 25.2(b)(3) restricted a defendant from appealing the voluntariness of his
plea without the trial court's permission. Id. at 79. The record does not show that Aponte has the
trial court's permission to appeal the voluntariness of his plea. Consequently, we are without
jurisdiction to consider that issue. (1) 

 The appeal is dismissed for want of jurisdiction.


 Ben Z. Grant

 Justice


Date Submitted: November 27, 2001

Date Decided: November 27, 2001


Do Not Publish
1. A plea bargain by its nature incorporates a voluntary and understanding plea of guilty, and
thus its process can only be triggered when the plea bargain and guilty plea are voluntarily and
understandably made; however, in the Cooper case, the Texas Court of Criminal Appeals determined
that an involuntary plea may be raised by a motion for new trial and habeas corpus, but not on
appeal. We are bound to follow this ruling. Cooper v. State, 45 S.W.3d 77 (Tex. Crim. App. 2001).



situation,
the state does not have the burden to disprove a defense the defendant did not raise. The
issue has been waived. The contention of error is overruled.

 Norton next contends the trial court erred by admitting three exhibits into evidence:
the cocaine, a suitcase, and a container of dryer sheets. He argues these were obtained
while he was being detained by the officer and that, because Bowen did not provide any
articulable facts to support the detention before his illegal search of the bags, all of the
evidence obtained through that search must be suppressed. 

 At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses, and our review of the trial court's ruling is limited to a
determination of whether it abused its discretion. 

 The general rule is that an appellate court should afford almost total deference to
a trial court's determination of the historical facts that the record supports, especially when
the trial court's fact-findings are based on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are also to afford such
deference to a trial court's ruling on the "application of law to fact questions," also known
as "mixed questions of law and fact," if the resolution of those ultimate questions turns on
an evaluation of credibility and demeanor. However, where the underlying facts are
undisputed, mixed questions of law and fact must be reviewed de novo. Hernandez v.
State, 957 S.W.2d 851 (Tex. Crim. App. 1998); see Guzman, 955 S.W.2d at 87, 89. Police officers do not violate the Fourth Amendment by merely approaching an
individual in public to ask questions. Such an encounter does not require any justification
whatsoever on the part of an officer. United States v. Mendenhall, 446 U.S. 544, 555 
(1980); Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Further, a request
to search does not automatically transform a consensual encounter into a police detention
under the federal Constitution. Florida v. Bostick, 501 U.S. 429 (1991); Hunter, 955
S.W.2d at 104; Jackson v. State, 77 S.W.3d 921, 926-27 (Tex. App.-Houston [14th Dist.]
2002, no pet.).

 Therefore, even when officers have no basis to suspect an individual, they may ask
questions of that individual, ask to examine that person's identification, and request to
search such person's luggage so long as the police do not by their actions actually inform
the person that compliance with their requests is required. Bostick, 501 U.S. at 434-35;
Hunter, 955 S.W.2d at 104. A seizure of the person occurs when the officer, by means of
physical force or show of authority, has in some way restrained the liberty of a citizen. 
Bostick, 501 U.S. at 434. In determining whether a seizure of the person has occurred for
Fourth Amendment purposes, a court must consider the totality of the circumstances
surrounding the encounter. Id. at 439; Hunter, 955 S.W.2d at 104. The dispositive
question is whether the police conduct would have communicated to a reasonable person
that the person was not free to decline the officers' requests or otherwise terminate the
encounter. Bostick, 501 U.S. at 439; Hunter, 955 S.W.2d at 104; State v. Velasquez, 994
S.W.2d 676, 679 (Tex. Crim. App. 1999); Jackson, 77 S.W.3d at 927. 

 The evidence, both from Bowen's testimony and from the audiotape of the
encounter, was that, not only did Bowen talk with Norton, but he told him at least three
times he did not have to talk to Bowen. There was testimony that Bowen asked Norton
four or five times if it was all right for him to search the bags and that he immediately
stopped looking through the bags when Norton told him to stop. Norton even carried his
bags around the station so Bowen could get his dog to sniff them. Even then, Bowen only
took the bags into his custody and began writing out a receipt to give Norton. It was at that
point Norton decided to prove to Bowen his bags were "clean" and emptied them, which
is when the contraband was discovered. 

 Norton did not testify that anything occurred or was said that could possibly amount
to coercion or that he was encouraged to continue the conversation. He testified he felt
he could not say "no" to the officer, but provided no reason for that "feeling." He also
testified that, although the officer never told him he had to stay, he also never told him he
could leave. This argument is only a matter of semantics. The statements are two
different sides of the same coin. If one does not have to stay, then certainly one can leave;
or, if one can leave, then certainly one does not have to stay. Norton's position is not
persuasive.

 In light of the testimony set out above, which clearly reflects the police officer told
Norton he was free to terminate the encounter at any point, we will not conclude a trial
court abused its discretion by determining the contact was consensual in nature. The
contention of error is overruled.

 Norton also contends the trial court erred by refusing to charge the jury with his
requested instruction on reasonable suspicion. Norton tendered a proposed instruction to
the court stating that, if the jury found Norton was detained (i.e., reasonably believed he
was not free to leave or physically stopped and restrained), then, if there was no
reasonable suspicion to support that detention, the jury should not refer to evidence
obtained as a result of the detention. 

 Appellate review of a claim of error in a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We must first determine
whether error occurred. If so, we then evaluate whether sufficient harm resulted from the
error to require reversal. Id. at 731-32. Error in the charge, if timely objected to in the trial
court, requires reversal if the error is "calculated to injure the rights of the defendant,"
which means no more than that there must be some harm to the accused from the error. 
Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); see Abdnor, 871 S.W.2d at 732;
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). A properly
preserved error will call for reversal as long as the error is not harmless. Almanza, 686
S.W.2d at 171.

 Article 38.23 requires the trial court to exclude any evidence that it finds as a matter
of law was obtained in violation of the Constitution or the laws of the United States or of
the State of Texas. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp. 2003); Hardin
v. State, 951 S.W.2d 208, 210 (Tex. App.-Houston [14th Dist.] 1997, no pet.). However,
where there is a fact issue regarding the manner in which the evidence was obtained,
Article 38.23 permits the court to submit the question to the jury. Hardin, 951 S.W.2d at
210. In such event, the trial court must include in its final charge an instruction that, if the
jury "believes, or has a reasonable doubt, that the evidence was obtained in violation of
[any provisions of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America,] then and in such event, the jury shall disregard any
such evidence so obtained." Tex. Code Crim. Proc. Ann. art. 38.23; see also Reynolds
v. State, 848 S.W.2d 148, 149 (Tex. Crim. App. 1993).

 In support of his position, Norton directs the Court to Atkinson v. State, 923 S.W.2d
21, 23 (Tex. Crim. App. 1996). Atkinson involves a jury instruction issued pursuant to Tex.
Code Crim. Proc. Ann. art. 38.23. Article 38.23 requires the trial court to instruct the jury
to disregard any evidence obtained illegally if the defendant requests the instruction and
raises a fact issue concerning the manner in which the evidence was obtained. Balentine
v. State, 71 S.W.3d 763, 773-74 (Tex. Crim. App. 2002). The only question is whether,
under the facts of a particular case, the defendant raised the issue with evidence, thus
requiring the jury instruction. Franks v. State, No. 2-00-431-CR, 2002 WL 1592443, at *29
(Tex. App.-Fort Worth July 18, 2002, no pet. h.); Crunk v. State, 934 S.W.2d 788, 794
(Tex. App.-Houston [14th Dist.] 1996, pet. ref'd).

 In this case, the jury was given an instruction which reads as follows:

 You are instructed that officer(s) may generally ask persons
questions, ask for identification, and request consent to search luggage,
provided that the officer(s) do not indicate in any way that the individual must
comply. It is not necessary that a defendant be given Miranda warnings prior
to giving consent.

 

 Therefore, unless you find from the evidence that, under the totality
of the circumstances, a reasonable person would feel free to refuse the
officer's request for consent to search, then you will find the consent
involuntary and disregard any fruits of that consent.


 Defense counsel's requested instruction goes in a different direction. It would
instruct the jury, not on the consent to search, but the precursor question of whether Norton
was detained by police despite the officers not having a reasonable suspicion that
something out of the ordinary was happening. As noted above, Norton was entitled to an
Article 38.23 instruction if the evidence at trial raised a factual issue concerning whether
the evidence was obtained in violation of the federal Constitution or the Texas Constitution
or any of its laws. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996); Hamilton v.
State, 831 S.W.2d 326, 331 (Tex. Crim. App. 1992).

 The critical question is therefore whether Norton raised a fact issue about whether
he was detained, or seized (in the terminology of the Fourth Amendment). In that respect,
we have the previously discussed testimony by the officer, corroborated by the audiotape,
indicating Norton was told on several occasions he could leave and did not have to talk to
the officer. Against that, we have Norton's testimony that, in spite of the words actually
said, and even though there were no external factors of threat, he did not "feel" he could
actually leave, and that if he tried to leave he would be arrested. 

 Norton originally testified he was not told he could refuse to talk to the officers, but
modified his testimony after hearing the audiotape in which Bowen told Norton on several
occasions he could refuse to talk to him. Norton also testified that the officers never
explicitly told him he could walk away, but admitted that the officer had told him after the
dog sniffed the bags that he (Norton) could just sign a receipt and leave. 

 The question is whether this constitutes any evidence from which a reasonable
person would have concluded he or she was not free to decline the officer's requests or
otherwise terminate the encounter. The caselaw cited above unequivocally holds that an
officer may ask questions of any citizen, without the questioning constituting a seizure of
the person. The consistent testimony from all parties is that the officer told Norton clearly
on multiple occasions that Norton did not have to talk to him and that the officer was in
plain clothes without a visible weapon. There is no testimony about any objective factor
to suggest any degree of threat or coercion of Norton by the officer, and the cases reflect
that the mere presence of an officer (which is all that is shown by the testimony of any
party) does not constitute compulsion. In the absence of any evidence that could be said
to show coercion beyond the mere physical presence of the officer, we conclude that there
is no evidence to justify the requested instruction and that the trial court did not err by
refusing to submit the requested instruction to the jury. 


 We affirm the judgment.




 Donald R. Ross

 Justice


Date Submitted: December 12, 2002

Date Decided: December 23, 2002


Do Not Publish