Opinion issued December 27, 2002







 



 







In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00040-CR
____________
 
AURELIO CAMPOS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 871,015
 

 
 
O P I N I O N
          A jury found appellant, Aurelio Campos, guilty of murder and assessed his
punishment at confinement for 47 years. In his sole point of error, appellant contends
that the trial court erred in denying his request to instruct the jury on the issue of
sudden passion in the punishment phase of trial. We affirm.
Facts and Procedural Background
          On the evening of March 4, 2001, Roy Anthony Farias was at his apartment
with his friend, Javier Quato, and Jose Huerta. Farias testified that he and Quato were
smoking marijuana and popping pills, and Huerta was drinking beer. At
approximately 2:30 a.m., appellant came to Farias’ apartment, telling the men that
someone had “jumped” him. Fernando Campos (“Nano”), appellant’s brother, was
visiting a neighbor downstairs and came up to Farias’ apartment to talk with
appellant. Appellant privately told Nano and Farias that he had not been jumped. 
Instead, the complainant, Francisco Javier Luna-Jamie, a transvestite, had picked him
up. After having anal intercourse with the complainant, appellant saw the
complainant’s genitals and realized that the complainant was, in fact, a man. 
Subsequently, the complainant drove appellant to Farias’ apartment.
          Farias testified that appellant was “kind of mad” and that he wanted to go “fuck
the motherfucker up.” Farias tried to convince appellant that they should only beat
up the complainant. Appellant and Farias formulated a plan to lure the complainant
out of his house by offering to sell him narcotics. Farias and Huerta drove appellant
to the complainant’s house and then waited 20 minutes for appellant to come out with
the complainant. When appellant and the complainant entered the complainant’s car,
Farias and Huerta then left to pick up Nano. After picking up Nano, who was
carrying appellant’s 9 millimeter pistol and Huerta’s rifle, the men drove to the 
parking lot of a store to meet appellant and the complainant in the complainant’s car. 
After Huerta parked his Jeep across the street, Farias and Nano got out of the Jeep
with the two guns. Farias stated that he saw appellant and Francisco inside the car
and they seemed to be talking.
          Appellant then called out to Nano and Farias to bring him the narcotics, but
neither of the men moved. Appellant walked over to the Jeep and told Farias to go
shoot the complainant. When Farias refused, the men argued for five minutes about
who would shoot the complainant. Finally, Farias told appellant “if you want to shoot
him so fucking bad, go shoot him yourself.” Nano gave appellant the pistol, and as
appellant began to walk back toward the complainant, Farias accidently pulled the
trigger on the rifle, barely missing appellant. Alarmed, the complainant asked
appellant what was happening. Appellant replied “there ain’t nothing happening” and
then shot the complainant 19 times with the pistol. Farias testified that appellant then
ran back to the Jeep and told everyone to keep quiet or the “same shit is going to
happen to you.” Huerta drove appellant and Farias to Farias’ apartment, and they hid
the guns underneath the apartment. Farias subsequently dumped the guns in a bayou,
and they were never recovered.
          Appellant’s written statement to the police was admitted into evidence in the
guilt phase of trial. In it, appellant stated that the complainant forced him to take pills
at gunpoint, he passed out, and he then “woke up” while having anal intercourse with
the complainant. Appellant further stated that when he saw the complainant later that
night, he “panicked.” The complainant then forced appellant into the car at gunpoint. 
After a struggle, appellant grabbed the complainant’s gun and shot the complainant
in self-defense. 
          During the punishment phase of trial, appellant requested a jury charge on the
issue of sudden passion. The trial court denied the request, noting that there was no
evidence in the record raising a sudden passion issue. The trial court allowed
appellant to reopen his defense for appellant to testify. Appellant then testified that
after the sexual assault, he cried, his pride was hurt, and he was drinking alcohol to
ease his mind. Appellant further testified that, as part of a “plan,” he went to the
complainant’s house to rob him. Appellant enticed the complainant to leave his home
for a narcotics deal. The complainant drove appellant to a store parking lot to
complete the narcotics deal. When they arrived at the parking lot, appellant got out
of the complainant’s car and retrieved a gun from the back seat of Huerta’s Jeep,
which was parked across the street. Appellant then returned to the complainant’s car
and shot the complainant. After hearing appellant’s testimony, the trial court again
denied appellant’s request for a sudden passion instruction, stating the record had
“zero evidence that shows that [appellant] was acting with any kind of passion at the
time of the killing.”Sudden Passion
          In his sole point of error, appellant argues that the trial court erred in refusing
to instruct the jury on whether appellant caused the complainant’s death under the
immediate influence of sudden passion arising from an adequate cause. In
considering whether any evidence is raised on this punishment issue, we review the
record from both the guilt-innocence and punishment phases of the trial. See
Buchanan v. State, 911 S.W.2d 11, 14-15 (Tex. Crim. App. 1995).
          During the punishment stage, a defendant may raise the issue as to whether he
caused the death of an individual under the immediate influence of sudden passion
arising from adequate cause. Tex. Pen. Code Ann. § 19.02(d) (Vernon 1994). If the
defendant can prove the issue of sudden passion by a preponderance of the evidence,
the offense is a felony of the second degree rather than of the first degree. Id.
          “Sudden passion” is defined as a passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed, which
passion arises at the time of the offense and is not soley the result of former
provocation. Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon 1994). “Adequate cause”
is defined as cause that would produce a degree of anger, rage, resentment, or terror
in a person of ordinary temper, sufficient to render the mind incapable of cool
reflection. Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon 1994). 
          If a defendant presents evidence of sudden passion, he is entitled to an
instruction on this mitigating circumstance regardless of whether the evidence raising
such an issue is strong, contradicted, weak, unimpeached or unbelievable. See
Benavides v. State, 992 S.W.2d 511, 526 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). The evidence may not, however, be so weak, contested, or incredible that it
could not support such a finding by a rational jury. Id. The question is whether there
was any evidence from which a rational jury could infer such passion. See Moore v.
State, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998). We review evidence offered in
support of a defensive issue in the light most favorable to the defense. Benavides,
992 S.W.2d at 526. 
          Appellant directs us to his written statement, in which he stated that he was in
a “panic” when he saw the complainant the second time and “thought [the
complainant] was going to mess with me.” Appellant argues that he was scared and
feared Francisco because of the prior alleged sexual assault. However, a mere claim
of fear does not establish sudden passion. Crunk v. State, 934 S.W.2d 788, 795 (Tex.
App.—Houston [14th Dist.] 1996, pet. ref’d). It has been noted that, “an actor who
fears for his life may coolly and deliberately dispatch his assailant without panic or
hysteria.” Fry v. State, 915 S.W.2d 554, 559 (Tex. App.—Houston [14th Dist.] 1995,
no pet.). For a defendant to obtain a sudden passion instruction, the evidence must
show that his mental state “rose beyond a bare claim of fear or was so strong and
overpowering that it rendered him incapable of rational thought and collected action.” 
Jones v. State, 963 S.W.2d 177, 180 (Tex. App.—Fort Worth 1998, pet. ref’d). 
          Appellant contends that the sexual assault provided the provocation and fear
for him to be in a sudden passion when he later shot the complainant. However, if
that was the passion influencing appellant, it cannot be reasonably said to be sudden,
arising at the time of the murder. As noted by the trial court, during appellant’s
testimony at the punishment phase of trial, appellant’s counsel tried several times to
lead appellant to testify that his “blood was boiling” or that he was “incensed” when
he subsequently saw the complainant. However, appellant responded that he was
“drunk” and that he kept drinking liquor “because his mind wasn’t all there.” 
          In his written statement, appellant claimed he “panicked” and shot the
complainant in self-defense. In his subsequent trial testimony, he stated he left the
complainant’s car, retrieved a gun from Huerta’s Jeep, and then returned to the
complainant’s car and shot the complainant. We conclude that the trial court was not
presented any evidence that appellant’s fear rendered him incapable of rational
thought. Nor does the record support appellant’s claim that he was acting with any
kind of passion arising at the time of the offense. Thus, we hold the trial court did not
err in denying appellant’s request to instruct the jury on the issue of sudden passion
in the punishment phase of the trial.
          We overrule appellant’s sole issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Radack.

Do not publish. Tex. R. App. P. 47.