**Sharon A. FIELDS, Plaintiff,**

v.

**Jane KEITH, Daryl M. Bryant, and Delta Airlines, Inc., Defendants.**

No. 3:99—CV—2682—L.

United States District Court, N.D. Texas, Dallas Division.

March 2, 2001.

Order Amending Opinion March 28, 2001.

W. D. Masterson, III. Kilgore & Kilgore, Dallas, TX, for plaintiff.

Stephen Fred Fink, Bryan Patrick Neal, Thompson & Knight, Dallas, TX, Andrea L. Bowman, Senior Atty., Delta Air Lines, Inc., Atlanta, GA, for defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court are the following matters:

1. Defendant Jane Keith's Motion for Summary Judgment, filed August 24, 2000;

2. Plaintiff Sharon A. Fields's Response in Opposition to Defendant Jane Keith's Motion for Summary Judgment, filed September 13, 2000;

3. Defendant Jane Keith's Reply in Support of Her Motion for Summary Judgment, filed September 28, 2000;

4. Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment, filed October 3, 2000;

5. Plaintiff Sharon A. Fields's Response in Opposition to Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment, filed October 20, 2000;

6. Defendant Delta Air Lines, Inc.'s Reply in Support of its Motion for Summary Judgment, filed November 6, 2000;

7. Plaintiff's Objections and Motion to Strike Defendant Delta Air Lines, Inc.'s Summary Judgment Evidence, filed October 20, 2000; and

8. Defendant Delta Air Lines, Inc.'s Response to Plaintiff's Objections and Motion to Strike Delta's Summary Judgment Evidence, filed November 19, 2000.

After careful consideration of the motions, responses, briefs, replies, and applicable authority, the court, for the reasons set forth herein, grants Defendant Keith's Mo-

tion for Summary Judgment and Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment. The court overrules and denies as moot Plaintiff's Objections and Motions to Strike Defendant Delta Air Lines, Inc.'s Summary Judgment Evidence.

## I. *Procedural and Factual Background*

Plaintiff Sharon A. Fields ("Plaintiff" or "Fields") filed this action against Jane Keith ("Keith"), Daryl M. Bryant ("Bryant") and Delta Air Lines, Inc. ("Delta")(collectively referred to as "Defendants") on October 27, 1999, in the 101st Judicial District Court, Dallas County, Texas. On November 24, 1999, Defendants removed the action to this court. Fields asserts claims for defamation under Texas common law and Tex. Civ. Prac. & Code § 73.001 *et seq.;* theft and conversion under Texas common law and Tex. Civ. Prac. & Code § 134.001 *et seq.;* invasion of privacy under Texas common law; and violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Defendants contend that they have engaged in no illegal conduct or action towards Fields and that Fields was discharged because she had not properly accounted for (mishandled) money she had collected from passengers for alcoholic beverages and headsets. Defendants Delta and Keith have filed separate motions for summary judgment.[1]

As expected, there are disputed facts in this case; however, many are not disputed. When the facts are in dispute, they are presented and viewed in the light most favorable to Fields as the nonmovant.

The court, however, does not consider a fact to be in dispute merely by a conclusory, speculative or argumentative statement or assertion that it is disputed. Competent summary judgment evidence must show that it is disputed. Finally, the court only cites and relies on those facts which are relevant and material to deciding the pending motions. Rather than expend scarce judicial resources to analyze and discuss such evidence, the court simply ignores it. Therefore, if evidence is not discussed in this opinion, the court did not deem it necessary to make its ruling. The court now sets forth the factual framework. Additional facts are set forth as necessary when a particular claim or issue is discussed.

Fields began working for Delta as a flight attendant in September 1969. As part of her duties, she was required to sell headsets and alcoholic beverages to Delta passengers. Delta does not closely monitor such sales and essentially has an honor system which relies on its flight attendants to report accurately their sales and turn in the proceeds from those sales. After an investigation of Fields's conduct on flights from Dallas/Fort Worth International Airport ("DFW") to Honolulu, Hawaii, and from Honolulu, Hawaii, to DFW in September 1999, Delta discharged Fields on October 7, 1999. To put the discharge in perspective, a recitation of facts preceding the discharge is necessary.

Several flight attendants reported that they believed that Fields was not turning in money collected for sales of alcoholic beverages[2] and headsets during flights. Following those reports, Betsy Hanry

---

1. Bryant contends that he has not been properly served and that this action should therefore be dismissed against him pursuant to Fed.R.Civ.P. 4(m). The court will address this matter in a later section of this opinion.

2. The parties have used the term "liquor" and "alcoholic beverages" at different times. Apparently, these terms are interchangeable. For consistency, the court uses the term "alcoholic beverages" where appropriate.

("Hanry"), Human Resource Supervisor of In–Flight Services, spoke to her supervisor, Keith, Manager of In–Flight Services at DFW, who directed her to call Delta Corporate Security. Hanry did so, and Delta's Corporate Security Department initiated an investigation into Fields's handling of Delta's money. As part of the investigation, Delta's Corporate Security employees Bryant and Patricia Dillard ("Dillard") traveled on two flights that Fields worked and used marked money to make purchases for alcoholic beverages and headsets from her on each flight.

On Sunday, September 19, 1999, Fields served as a flight attendant on a flight from Dallas to Honolulu. Fields usually worked flights on weekends because she attended college during the week. Prior to flying to Honolulu on September 19, 1999, Fields had withdrawn $150 in cash from her checking account at Delta's Employees Credit Union ("DECU") by three checks, each of which was cashed at a grocery store with a $50 per check limit. When she boarded the Sunday flight to Honolulu, Fields had $200 cash, $150 from the three checks she had cashed, plus $50 cash she already had.

Fields customarily carried excess cash on her flights because as a senior flight attendant she believed that it was important for her to have cash available to make change for customers who purchased beverages on the flight. Delta did not provide any flight attendants with any change to make these transactions. Fields arrived in Honolulu on Sunday, September 19. On September 19 or 20, Fields cashed two checks for $50 each at her hotel. When she boarded the flight from Honolulu to Dallas, she had $300 cash of her own money.

On the flights to and from Honolulu, Delta security investigator Bryant and Dillard, the Delta investigator in charge, were on board. Dillard had marked $20 and $10 bills for use as part of the investigation regarding Fields's conduct. On the flight from Honolulu, Fields shortchanged Dillard five dollars after she had made a purchase. Also, on the flight from Honolulu, Fields observed Bryant distribute a marked bill to a passenger on the flight.[3] On the return flight to Dallas, Fields was required to make change for numerous customers who purchased beverages for cash. As was the custom and procedure at Delta, Fields kept the sales cash in her caddy until the end of the flight, at which time cash and alcoholic beverage bottles were missing from Plaintiff's caddy. Fields did not sign the certification card in her liquor kit because of the discrepancies. Ann Longino, another flight attendant who was responsible for completing the liquor form for the flight, wrote on the liquor form that Fields was responsible for eight bottles. Gail Kiefer, the attendant in charge, completed the liquor report. According to Fields, the report had not been filed by Kiefer at the time Delta's security personnel confronted her (Fields).

At the conclusion of the flight, Fields went to DECU to deposit her cash. Fields deposited $300 cash, and the cashier gave her a deposit receipt slip for $300. At this time, Dillard and Bryant appeared and accused Fields of having stolen in-flight beverage funds. Bryant removed bills totaling $80, which he stated had been marked from the cash which Plaintiff had just deposited with DECU. Bryant stated in the presence of Fields, Keith, and Dillard, that she (Fields) had stolen funds,

---

**3.** Plaintiff's First Amended Complaint reference two marked bills, while Fields's affidavit references one marked bill. As the affidavit is under oath, the court accepts the language set forth in the affidavit.

including specifically the $80 represented by marked bills. According to Fields, Bryant stated that "entrapping" her was the "easiest case [he] ever had" because Fields was so "stupid."

According to Plaintiff, at the time of the foregoing events, Delta was in the middle of a union organizing campaign as a result of management failures, such as the failure to institute any organized accounting systems for the in-flight beverage receipts to protect Delta's flight attendants, as well as other management failing. Plaintiff supported the union organization drive.

Keith suspended Fields on September 22, 1999, pending completion of the investigation. Keith later prepared a memorandum recommending that Fields be discharged. Based on that memorandum and other information, Delta terminated Fields's employment for improper handling of Delta funds. Fields was given the option of resigning instead of being terminated, but she refused to resign and was terminated. On October 7, 1999, Keith informed Fields of her discharge.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails.

to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### III. *Analysis*

### A. Defendants Keith and Delta's Motions for Summary Judgment

#### 1. Defamation

▆▆▆ The court first addresses Plaintiff's claim for defamation. Under Texas law, a defamatory statement is one in which the words tend to damage a person's reputation, exposing him to public hatred, contempt, ridicule, or financial injury. *Einhorn v. La Chance,* 823 S.W.2d 405, 410–11 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.), *cert. denied,* 517 U.S. 1135, 116 S.Ct. 1420, 134 L.Ed.2d 544 (1996). Texas law recognizes two types of defamation: libel and slander. An action for libel requires the publication of a written defamatory statement about the plaintiff to a third party. *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 633–634 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Slander is an oral defamation published to a third party without legal excuse. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995); *Kelly v. Diocese of Corpus Christi,* 832 S.W.2d 88, 91 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.). To maintain a cause of action for defamation, a plaintiff must state facts which would show that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; and (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998).

▆▆▆ "Accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates, have a qualified privilege." *Conti-Commodity Servs., Inc. v. Ragan,* 63 F.3d 438, 442 (5th Cir.1995); *Washington v. Naylor Indus. Servs., Inc.,* 893 S.W.2d 309 (Tex.App.—Houston [1st Dist.] 1995, no writ)(an employer's accusations are privileged when made to a person having a business interest in the information); *Mitre v. La Plaza Mall,* 857 S.W.2d 752, (Tex.App.—Corpus Christi 1993, writ denied)(qualified privilege found where mall employees communicated to individual store owners that plaintiffs were counterfeiters). This qualified privilege protects these kinds of communication in the absence of actual malice. *ContiCommodity,* 63 F.3d at 442. In the context of defamation, actual malice means "the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true." *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989). "Reckless disregard" means that a statement is made with "a high degree of awareness of probable falsity." *Id.* To find actual malice, there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *ContiCommodity,* 63 F.3d at 442–43 (quoting *Hagler v. Proctor & Gamble Mfg., Co.,* 884 S.W.2d 771, 771–72 (Tex. 1994)).

▆▆▆ When a qualified privilege is asserted as an affirmative defense, which Keith and Delta have both done, whether the statements are true is of no moment, unless there is clear evidence of actual malice. A plaintiff must overcome the affirmative defense of qualified privilege to defeat summary judgment. *ContiCommodity,* 63 F.3d at 443. If a fact question

exists whether a statement or comment was made with actual malice, that statement automatically loses qualified privilege status, and summary judgment would be inappropriate. *See Bozé v. Branstetter,* 912 F.2d 801, 807 (5th Cir.1990). "Negligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 313 (5th Cir.1995)(citing *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 924 (Tex.App.—Corpus Christi 1991, writ dismissed w.o.j.)). In the context of the summary judgment motion, Fields must prove actual malice rather than Keith prove the absence of malice. *Id.* at 314.

The allegations upon which Fields relies to support her claim of defamation against all Defendants are set forth in her First Amended Complaint ("Complaint") as follows:

3.02 Defendants defamed Plaintiff by accusing Plaintiff to Plaintiff's associates and to Delta management of theft by taking funds illegally from in-flight beverage service proceeds. Mark Baxter, a Delta general manager of human resources, fired Plaintiff based upon a Pat Dillard report and a Jane Keith write-up (Baxter depo 13). The Dillard report included the following defamations:

- That Plaintiff turned in no money on 33% of her flights. Dillard admitted this was false (depo 31–33).

- That Plaintiff attempted to short change Dillard out of $5.00

- That Plaintiff was 'stealing' money from Delta and its passengers. Baxter admitted he could not say Plaintiff took any money (depo 8–9).

- That Plaintiff deposited 'company money' into her credit union account. Baxter admitted he could not say Plaintiff took any money (depo 8–9).

3.03 Baxter also relied upon a defamatory Jane Keith write-up which included the following defamations:

- That Plaintiff was 'suspected of theft.'

- That Plaintiff engaged in the 'unauthorized removal of liquor/headset money.'

3.04 Keith also sent a defamatory e-mail to Jan Smith dated September 21, 1999, in which Keith stated that Plaintiff was suspended 'pending an investigation into an allegation of stealing liquor money.'

3.05 Keith sent an e-mail to Allison Johnson dated September 27, 1999, defaming Plaintiff as an undesirable by stating that if the union helped Plaintiff it would 'just show how the unions punish us all by letting *people like sharon* [sic] stay with Delta.' (*emphasis in original*)

■ The court need not decide whether Keith or Delta defamed Fields; it determines that the statements, even if defamatory, were privileged. Accordingly, the court confines its discussion to the issue of privilege. The court finds that the statements made or repeated by Keith or other Delta personnel as set forth by Plaintiff were made or repeated during the course ·and scope of the investigation into Fields's conduct, or as the result of the investigation. Such statements squarely fall into the category of those made to persons having an interest or duty in the matter to which the statements related, namely, the investigation of Delta employee Sharon Fields's conduct regarding the handling of Delta's money which was collected from customers for the sale of alcoholic beverages and headsets.

Fields contends that Keith's and Delta personnel's statements are not protected by a qualified privilege. The court disagrees. Fields cites extensively to *Duffy* in her effort to defeat Keith's and Delta's affirmative defense of qualified privilege. Plaintiff's reliance on *Duffy*, however, is misplaced, and it at times is misquoted. For example, Fields states that "*Duffy* holds that the qualified privilege is lost unless the defendant 'actually believed the defamatory statement to be true.'" Plaintiff's Brief in Support of Plaintiff's Response in Opposition to Defendant Jane Keith's Motion for Summary Judgment at 7. This language is taken out of context. *Duffy* states that "the privilege is not lost if the defendant actually believed the defamatory statement to be true." *Duffy* 44 F.3d at 314. Moreover, while *Duffy* sets forth the applicable legal standard in this area, the result it reached offers little support for Fields's position, as *Duffy* held that the plaintiff did not establish actual malice.

▆▆▆ Plaintiff first attacks the qualified privilege by stating that the "story" regarding her is fabricated. Fields asserts that Keith and Delta first accused her of "stealing in-flight liquor funds," and then later "changed gears" and accused her of "only violating Delta's procedures," because their evidence of theft was "meaningless." Plaintiff also produces evidence that Mark Baxter ("Baxter"), Delta's General Manager of Human Resources, testified that Fields was fired for not following "proper procedures" in turning in money collected from customers. Patricia Dillard stated that she was investigating whether "money had been mishandled." Fields also states that Dillard admitted in her final report that the real charge against her (Fields) was for "theft." Keith testified at her deposition that Delta was investigating the "unauthorized removal of the liquor/headset money." Keith also testified that at the time of her deposition, there was no doubt in her (Keith's) mind that Delta was investigating a charge that Fields was "stealing money." Bryant's impression was that Fields was being investigated for stealing money. Finally, Fields states that Keith testified at her deposition that it was general knowledge at Delta that Fields was fired for "theft."

▆▆▆ Apparently, Fields contends that the different characterizations of the charge for which she was being investigated and ultimately fired establish actual malice by Keith or Delta. The court really does not understand the purpose of this evidence, because none of it establishes that when Keith or other Delta personnel made any allegedly defamatory statement about Fields they had a high degree of awareness that the underlying facts reported to them or made by them regarding Fields were false. Fields contends that certain documentary evidence of these individuals is inconsistent with their deposition testimony. A party cannot, without explanation, use an affidavit to contradict sworn testimony in an effort to defeat summary judgment. *S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir.1996). Such is not the case here. First, Delta and Keith are not trying to defeat summary judgment. Second, the court does not find the different characterizations of the nature of Fields's conduct to be contradictory or inconsistent. There is no question that all of these statements when read in their proper context convey the same message: that Fields was being investigated for conduct that arguably put her honesty in question, regardless of the specific terms used to describe it. Such differences in characterization are not unusual; some persons prefer to use more euphemistic terms when describing conduct that is undesirable or contrary to

what is expected. The difference in characterization does not affect the substance of the investigation. Regardless of how Fields's conduct was characterized, the bottom line is that Delta was not receiving proceeds from the sale of alcoholic beverages and headsets because of Fields's alleged conduct.

Fields attacks the quality of the investigation as a whole. Specifically, she (1) characterizes the audit of her (Plaintiff's) flights from August 1998 through July 1999 as "nonsensical" and "meaningless;" (2) attacks and questions the use and reliability of the marked bills Delta used during its undercover operation; (3) accuses two other Delta flight attendants, Gayle Keifer ("Keifer") and Kate Youngblood ("Youngblood") of wrongdoing and questions their credibility because of their allegedly soiled records; (4) accuses Dillard of being unqualified to conduct and manage the investigation and states that Dillard was terminated from two prior jobs, one with the United States Postal Service and the other with Trans World Airlines ("TWA"); and (5) accuses Delta and Keith of "singling her out, setting her up, and then terminating her" because she was a union supporter. The court understands Plaintiff's argument, but therein lies the problem. Plaintiff is long on argument and rhetoric; however, the court cannot draw conclusions not supported by the evidence to establish actual malice by Keith and Delta.

Plaintiff is highly critical of the investigation because she believes it was inadequate, and did not focus on other persons who could have been stealing Delta's money and should have been investigated and considered "suspects." Perhaps Delta should have investigated others. Maybe other flight attendants were misappropriating, improperly handling, stealing or mishandling Delta's money. Assuming

this to be the case, such does not mean that Keith or Delta had serious doubts about statements made concerning the investigation, suspension and ultimate discharge of Fields. Likewise, that Plaintiff was the only or first flight attendant to be discharged for "stealing in-flight funds" is of no moment. Under this theory, a business would never fire anyone because it would be concerned with the filing of legal action against it every time it fired someone for the first time for the violation of company policy that has long been on the books but not enforced. Under such theory, an employee could violate company rules with impunity because he or she would have no fear of disciplinary action. That someone is the first to be fired for a particular violation of company policy is not grounds for a lawsuit, unless there is sufficient evidence that the discharge violates some other statute, or right created by the courts, for example, retaliation for engaging in protected activity. The court finds no basis for such a claim, and will discuss Plaintiff's RLA claim later in this opinion.

That Delta's investigation did not have the pomp and circumstances, intrigue, stealth, seasoned law enforcement officials and other trappings that may have accompanied a Federal Bureau of Investigation sting operation, or the sophistication and high technology innovations one sees in a James Bond movie, is not evidence that creates a genuine issue of material fact regarding actual malice. Of course, since Plaintiff was the target of Delta's investigation, which resulted in an adverse action against her, she understandably is critical of the investigation; however, such criticism does not create a fact issue regarding actual malice. The summary judgment evidence reveals that Delta, prior to its investigation of Fields, (1) had received reports from flight attendants in early 1999 that Fields was mishandling alcoholic bev-

erages and headset money, or turned in insufficient money for sales made, and (2) had received two more reports that Fields may have been mishandling or turning in insufficient funds for the sale of alcoholic beverages and headsets. As a result of these complaints, Delta management contacted corporate security for assistance, and an investigation of Fields began. Dillard and Bryant went on two flights that Fields worked. Dillard marked and photocopied some currency that she planned to give to Fields for the purchase of alcoholic beverages and headsets. Dillard and Bryant purchased headsets and alcoholic beverages on the trip from Dallas to Honolulu, and Dillard, Bryant, and a passenger purchased alcoholic beverages and headsets totaling $44 on the trip from Honolulu to Dallas. All purchases were paid for with marked currency. At the end of the flight, cash and alcoholic beverages bottles were missing from Fields's caddy. There was also a discrepancy between Fields's alcoholic beverages count and the money turned in by her, which Fields has not denied or explained. Fields made a cash deposit of $300 at DECU. The teller at DECU set the money aside as instructed by Dillard and then turned it over to Dillard. Dillard compared the money Fields deposited with photocopies of the marked money and found that $80 of the $300 deposited was money she had previously marked. Fields was questioned by Bryant. Keith was contacted and attended the interview. At the conclusion of the meeting on September 21, 1999, Keith suspended Fields pending the final outcome of the investigation.

The criticisms of the investigation lodged by Fields simply do not establish that Keith or Delta acted with malice regarding any statements made. Fields's criticisms of the investigation are either without merit or simply irrelevant. First, that the audit may or perceived to have been meaningless is of no moment. What prompted the investigation was the frequency of complaints that Fields was not turning in sufficient funds for the sale of alcoholic beverages and headsets. Second, the criticism of the use of marked bills is simply based on Fields's opinion that reliance on them would not assist the investigation. The marked bills and observations by Bryant and Dillard did aid the investigation. The court states without equivocation or hesitation that the marked bills alone is not proof of theft or mishandling of funds; however, taking the evidence and investigation as a whole and what Delta knew prior to marking the currency, the court believes that no genuine issue of material fact is created regarding malice, even if Delta and Keith were mistaken about Fields's conduct. Third, the attacks on Keifer and Youngblood's backgrounds and credibility are irrelevant, vicious and vituperative statements. Moreover, the court does not make credibility assessments when ruling on a motion for summary judgment. *Crowe v. Henry*, 115 F.3d 294, 298 (5th Cir.1997). Fourth, Fields's statement that Dillard was incompetent to conduct the investigation is simply an opinion or conclusory statement unsupported by the summary judgment record, and Fields's reference to Dillard's discharge from the United States Postal Service in 1984 and from TWA in 1993 or 1994 is simply irrelevant to the court's inquiry regarding actual malice. The inclusion of this information and other private, irrelevant information about other Delta personnel serves no purpose except to embarrass and humiliate those individuals. In sum, while the investigation of Fields was not conducted with the sophistication of a big city police department and certainly could have been more extensive, the court is satisfied that nothing concerning the investigation, or statements made during the

course of the investigation, raises a genuine issue of material fact regarding actual malice. Moreover, even if the investigation were conducted in a negligent manner, negligence is insufficient as a matter of law to establish actual malice. *Duffy*, 44 F.3d at 313. For the reasons stated herein, Fields has failed to establish or raise a genuine issue of material fact that Delta personnel or Keith had serious doubts as to the truth of any statements when they were made or reported. That Keith or Delta *may* have been or were mistaken about Fields's conduct is insufficient to defeat summary judgment when there is no actual malice. Delta and Keith are therefore entitled to judgment as a matter of law on Plaintiff's defamation claim.

## 2. Invasion of Privacy

■■■■ The court next addresses Plaintiff's claim of invasion of privacy. To establish a cause of action for invasion of privacy for intrusion upon one's seclusion under Texas law, one must show that there was "an intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that is highly offensive to a reasonable person." *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir.), *cert. denied*, 522 U.S. 818, 118 S.Ct. 69, 139 L.Ed.2d 30 (1997). Typically, an action for intrusion upon one's seclusion exists "only when there has been 'a physical invasion of a person's property or . . . eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'" *Ross v. Midwest Communications, Inc.*, 870 F.2d 271, 273 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 326, 107 L.Ed.2d 316 (1989)(*quoting Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.— Fort Worth 1982, no writ)). The court finds that Fields fails to meet the test for establishing an invasion of privacy claim.

In support of her claim for invasion of privacy, Fields sets forth the following allegations in her Complaint:

5.02 Jay Gratwick, Delta's manager of internal audit for the Delta Employees Credit Union, admitted that information about Plaintiff's account was confidential, but that he nevertheless looked at Plaintiff's account records and advised Delta's investigator Pat Dillard that Plaintiff had made 8–10 cash deposits in the last three months. Gratwick admitted that Dillard required a subpoena to obtain information on Plaintiff's account, but had none, yet he gave her the information anyway.

5.03 Gratwick further admitted that he advised his subordinates to give security 'no' information.

5.04 Gratwick further stated that '[T]here's no way for corporate security to go into her [Plaintiff's] account to . . . to do anything,' much less remove $80.

5.05 The attempted Keystone Cop setup on the flight back from Honolulu to Dallas with the marked bills, the monitoring of Plaintiff's bank accounts, and the theft of $80 from Plaintiff's checking account deposit invaded Plaintiff's constitutional and common law right of privacy, resulting in substantial damages to Plaintiff, for which Plaintiff sues.

■■■■ Based upon Fields's pleadings and the summary judgment evidence, she is asserting three instances where her privacy was invaded: (1) the use of marked money by Dillard; (2) Gratwick's informing Dillard that Fields had made 8–10 cash deposits during the last three months; and (3) the removal of the $80 in marked money from her deposit of $300. That Fields was given marked bills clearly does not meet the test for invasion of privacy, and no viable claim exists for the use of the marked bills by Dillard. Regarding the revelation of the number of deposits Plain-

tiff made and the removal of the $80, the court finds that these two acts are insufficient to establish a claim for invasion of privacy. The court finds the following language informative, persuasive and controlling:

> [W]hile Texas has recognized a claim for breach of the common law right of privacy, *Billings v. Atkinson*, 489 S.W.2d 858 (Tex.1973), claimants seeking to extend this right to improper disclosure of banking or credit records have fared poorly. *See Cullum v. Gov't Employees Financial Corp.*, 517 S.W.2d 317, 318 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.)(finding no cause of action where lender's financial institution sent letter to lender's employer seeking assistance in collection); *Palmatier v. Beck*, 636 S.W.2d 575, 577–78 (Tex. Ct. App.—Fort Worth, 1982, no writ)(holding that no claim for breach of right privacy existed where bank released account balance information to landlord of depositor's son). Both *Cullum* and *Palmatier* suggest an important limitation to an actionable privacy right in Texas—true statements of a customer's or creditor's account made without hype are not actionable. Distinguishing earlier recognition of a privacy right in *Billings*, the courts in both *Cullum* and *Palmatier* noted that the disclosures before them were not 'inflammatory, humiliating, or misleading statements.' *Cullum*, 517 S.W.2d at 317; *Palmatier*, 636 S.W.2d at 577–78 (citing *Cullum*).

*Velasquez–Campuzano v. Marfa Nat'l Bank*, 896 F.Supp. 1415, 1426 (W.D.Tex. 1995), *aff'd*, 91 F.3d 139 (5th Cir.1996). Based upon the authority of *Velasquez–Campuzano*, Fields has no basis for a claim of invasion of privacy for the two acts mentioned. Moreover, regarding the $80, Fields had no right to or expectation of privacy in those bills. As Fields correctly notes, cash is fungible. When one

makes a deposit, she is entitled to have her account increased by the amount of the deposit; however, the court is aware of no authority, and Fields has cited none, which holds that a depositor has a privacy right to, or interest in, the specific money that was actually deposited. The court also determines that the cases relied on by Fields to support her invasion of privacy claim are either inapposite or clearly distinguishable. There is no genuine issue of material fact regarding Fields's claim of invasion of privacy, and Keith and Delta are entitled to judgment as a matter of law.

### 3. Railway Labor Act

Fields contends that her discharge constituted a violation of the RLA, 42 U.S.C. § 152 (Fourth) because it was in retaliation for her union organizing activity. Section 152 prohibits an employer from retaliating against an employee for engaging in union-organizing. To support her claim under the RLA, Fields sets forth the following allegations in her Complaint:

> 6.02 At the time of the events complained about, Delta was in the midst of a union-organizing campaign, Plaintiff supported the drive, and Delta retaliated against Plaintiff for supporting the drive by making false charges of theft against her, invading the privacy of her credit union account, stealing her money, and then firing her.
>
> 6.03 Pat Dillard testified that she was told that Plaintiff was a union supporter before her investigation of Plaintiff began. While Dillard claims not to remember who told her, Defendant Keith was one of only three people who could have told Dillard that.
>
> 6.04 Keith sent an e-mail dated September 27, 1999, to Allison Johnson reporting that Plaintiff had contacted a flight attendant who was a union sup-

porter and stated she hoped the union would try to help Plaintiff because it 'would just show how the unions punish us all by letting people like sharon [sic] stay with Delta.'

■■■■■ To prevail on her claim of wrongful discharge under 45 U.S.C. § 152, Fields must establish that the "discharge or other adverse action ... is based in whole or in part on anti-union animus or ... that the employee's protected conduct was a substantial or motivating factor in the adverse action." *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984) (quoting *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983)). A plaintiff must initially demonstrate that anti-union animus contributed to the employer's decision to discharge her. *Id.* If Fields initially demonstrates that anti-union animus was a motivating factor in discharging her, Delta may avoid liability by showing that Fields would have been discharged even if she had not been involved with the union. *Id.* at 222–23.

■■■ Fields's evidence of retaliation is insufficient to defeat summary judgment. First, Fields states in conclusory fashion that she was retaliated against for union organizing. This and other "evidence" are simply too slender a reed to support a finding of retaliation for union organizing. Fields states that Dillard was told that she (Fields) was a union supporter. The actual testimony of Dillard during a deposition was that "[she] may have heard that [Fields was a union supporter]." Clearly there is uncertainty on Dillard's part, and all other answers given by Dillard flow from this uncertainty. Dillard does not recall whom may have told her about Field's union activity. In any event, even if Dillard were aware that Fields was a union supporter, such knowledge by itself is simply of no moment. Likewise, the e-mail of September 27, 1999, to Allison Johnson ("Johnson") does not establish that Delta took adverse action against Fields because of her union activity. Fields "overeggs the pudding" and attributes statements to Keith that she did not make. Plaintiff's Complaint asserts that Keith "hoped the union would try to help [Fields]." The e-mail actually reflected that the *flight attendants* hoped that the union would get involved. Keith simply did not make the statement, and was only relaying information to Johnson that she had heard concerning Fields's suspension and possible termination. That the e-mail also contains a statement that the suspension and possible termination of Fields "is turning into a union hot potato" does not show evidence of anti-union animus, assuming it was made by Keith. This statement reflects her assessment of the atmosphere surrounding Fields's suspension and possible termination and that the lawyers representing the flight attendants' group or association will be fighting vigorously on Fields's behalf. That the word "union" is merely mentioned in the e-mail is wholly inadequate to establish anti-union animus on Delta's part. Finally, Fields attacks Baxter's affidavit as self-serving. Baxter, the person who actually terminated Fields, states that he had no anti-union animus. Fields contends that Baxter's decision was based on written statements by Keith and Dillard, both of whom, according to Fields, were motivated by her (Fields's) union affiliation, and therefore his affidavit should be given no weight. The problem with this approach is that Fields presents no competent summary judgment evidence that Baxter was motivated by anti-union animus or that either Keith or Dillard was motivated to act because of Fields's union affiliation. One cannot establish a claim under the RLA through subjective beliefs and sheer speculation. A reasonable jury could not conclude on the summary judg-

ment evidence presented that Plaintiff's protected conduct of union organizing was a substantial or motivating factor in her discharge. To conclude that Fields's conclusory and speculative statements show anti-union animus requires a quantum leap of logic which this court cannot make given the summary judgment record. Accordingly, there is no genuine issue of material fact regarding Plaintiff's RLA claim, and Delta and Keith are entitled to judgment as a matter of law.[4]

### 4. Theft and Conversion

Fields contends that Delta and Bryant stole and converted personal property belonging to her. In support of this claim, Fields set forth the following allegations in her Complaint:

> 4.02. The flagrant misappropriation by Delta and Bryant of the $80 cash deposited by Plaintiff into her checking account, and accepted by the credit union for deposit, constituted conversion and theft under the Texas Theft Liability Act, Chapter 134 of the Tex. Civ. Prac. & Rem.Code, §§ 134.001, *et seq.* Jay Gratwick, Delta's manager of internal audit for the Delta Credit Union admitted that Delta security had no authority to remove cash from Plaintiff's account. Such conversion and theft caused Plaintiff to be fired, so that Defendants Delta and Bryant are liable for all damages resulting from Plaintiff's discharge, including past and future damages to earnings capacity, past and future lost earnings, past and future mental anguish and emotional distress, the loss of Plaintiff's educational opportunities, and all general, special, consequential and incidental damages.

Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971). Normally, a plaintiff must establish that a demand was made to return the property, and the defendant refused to do so. *Whitaker v. Bank of El Paso,* 850 S.W.2d 757, 760 (Tex.App.—El Paso 1993, no writ). A showing of demand and refusal, however, is unnecessary when the possessor of the property shows a "clear repudiation of the plaintiff's rights." *Id.*

With respect to her theft claim in this instance, Fields must establish that Delta unlawfully appropriated her property as described by Section 31.03 of the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code, §§ 134.002, 134.003 (Vernon 1997 and Supp.2001). A person commits theft if "he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03 (Vernon 1989). "Deprive" means:

> (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value of the property is lost to the owner;
>
> (B) to restore property only upon payment of reward or other compensation; or
>
> (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.

Tex. Penal Code Ann. § 31.02(2) (Vernon Supp.2001).

Plaintiff's allegations as to her conversion and theft are problematic. As

**4.** Delta also contends that Fields's RLA claim is barred by a six-month statute of limitations. As the court has disposed of the RLA claim on the merits, it does not address the statute of limitations issue.

previously stated, cash is fungible, and Fields had no right to the physical possession of the $300 once she deposited it at DECU. She was entitled to have her account balance increased by the amount of the deposit, which was $300. The theft or conversion, if any, would be the failure to credit her account for the $80. The physical possession of the $80 by Delta, however, did not cause Plaintiff harm. Whether Delta temporarily maintained control of the $80 until it was photocopied, examined, and matched with recorded serial numbers, or kept it for an extended period of time in a secure place, is immaterial. What physically happened to the currency is totally irrelevant. The court does not believe that the Texas Legislature intended that the failure to credit an employee's account as a result of an investigation by the employer into possible theft or misconduct by that employee constitutes theft on the part of the employer. To hold that Delta committed theft of Field's $80 would produce an absurd result, which the court sincerely doubts was contemplated by the Texas Legislature when it passed the Texas Theft Liability Act in 1989.

The court also addresses the physical possession of the $80. Although a criminal case and not entirely on point, *Crunk v. State*, 934 S.W.2d 788, 791–92 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd), is informative. In *Crunk*, property was turned over to the police during the course of an investigation by an individual's roommates, and the court held that under such circumstances the requisite intent to permanently deprive the owner of the property was not present as required under § 31.02(2)(A). Here, the money was held as evidence of Fields's conduct, whether

characterized as theft, failure to follow procedures in handling Delta's money, mishandling money or whatever, for use in a possible criminal or civil proceeding, which is reasonable given the nature of our litigious society. Finally, Fields cites no authority which allowed recovery for theft under circumstances similar to those in this case, and the court has found none in its research.[5]

 Insofar as her conversion claim is concerned, Plaintiff is not entitled to recover. First, she has not established in her pleadings or otherwise that she has made demand for return of the property and that Delta refused her demand, or that Delta acted in clear repudiation of her rights. Second, assuming that Fields has established both of these elements, she is not entitled to recover because she has been made whole. The measure of damages for converted property is the value of the property at the time of conversion, plus legal interest. *Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980). Fields's account at DECU was credited in September 2000 for the $80, plus interest. Accordingly, no claim exists as Fields has received all to which she is legally entitled.

For the reasons stated herein, there is no genuine issue as to Plaintiff's conversion and theft claim. Defendants Keith and Delta are therefore entitled to judgment as a matter of law on this claim.

 Fields has requested punitive damages on her conversion and theft claim. To recover punitive damages, Fields must show, or raise a genuine issue of material fact, by clear and convincing evidence that Delta acted with malice.

---

5. The court finds disingenuous Delta's argument that the teller at DECU acted on behalf of DECU rather than Delta. The teller followed Dillard's instructions after Fields made the $300 deposit, set the currency aside and brought it to her (Dillard). There is no question that the teller was acting on Delta's behalf because she was following and acting pursuant to Dillard's instructions.

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established. "Malice" means: (a) a specific intent by Delta to cause substantial injury to Fields; or (b) an act or omission, by Delta (i) which, when viewed objectively from the standpoint of Delta at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. The court, having reviewed the summary judgment record, determines that Delta's conduct simply does not meet either standard for malice. Since the evidence is insufficient, Fields fails to raise a genuine issue of material fact regarding punitive damages, and Delta is entitled to judgment as a matter of law.

## B. Miscellaneous

### 1. Service on Defendant Bryant

Bryant contends that he has not been properly served. Specifically, Delta contends that Bryant was not served within 120 days after the complaint was filed and that before the action was removed to the federal court, Bryant had not been properly served under state law. Fields addressed this issue in her brief only in passing. Fields states in conclusory fashion that Plaintiff properly served Defendant Bryant and referred the court to Exhibit 14 of her Appendix, which contains documents received by the Secretary of State of the State of Texas regarding Bryant and forwarded to him in care of Delta Air Lines at a post office box in Atlanta, Georgia.

■ The court concludes that Bryant was not served as required under applicable state law. Under Tex. Civ. Prac. & Rem.Code § 17.045(a) (Vernon 1989), when an individual nonresident has been sued, the Secretary of State requires, or plaintiff must provide, a statement of the individual's home address to the Secretary of State, and a copy of the process must be mailed to the nonresident at the home address provided. *Chaves v. Todaro*, 770 S.W.2d 944, 946 (Tex.App.—Houston [1st Dist.] 1989, no writ). Bryant's home address was not provided, and no process was sent to Bryant's home address. The failure to comply with these requirements renders service ineffective. The state court therefore had no personal jurisdiction over Bryant.

■ Fed.R.Civ.P. 4(m) requires service to be effected within 120 days after a complaint is filed. No service on Bryant has taken place since the action was removed, and more than 120 days have elapsed since its removal to federal court. Since the state court had no personal jurisdiction over Bryant and since Fields has not served Bryant with her Complaint, this court has no personal jurisdiction over Bryant. He is not properly before the court, and the court must dismiss without prejudice this action against Bryant pursuant to Fed.R.Civ.P. 4(m).

### 2. Parties' Objections to Summary Judgment Evidence

Both sides have filed objections to certain summary judgment evidence. *See* Plaintiff's Objections and Motion to Strike Defendant Delta Air Lines, Inc.'s Summary Judgment Evidence, and Delta's Objections to Fields's Summary Judgment Evidence. Defendant Delta's Reply in Support of its Motion for Summary Judgment at 10–12. The court has set forth the applicable standard for competent summary judgment evidence earlier in this

opinion. If the summary judgment evidence did not meet the standard, the court did not consider it; it was ignored. The court does note that evidence concerning the motions that Delta or Keith had was considered because it is relevant to the issue of actual malice, and as such was not admitted for the truth of the matter asserted. Fields's and Delta's objections are hereby **overruled as moot**, and Fields's motion to strike is **denied as moot.**

## IV. *Conclusion*

For the reasons stated herein, there is no genuine issue of material fact regarding any of Plaintiff's claims. Accordingly, Defendant Jane Keith's Motion for Summary Judgment and Defendant Delta Air Lines, Inc.'s Motion for Summary Judgment are hereby **granted.** Plaintiff's Objections and Motion to Strike Defendant Delta Air Lines, Inc.'s Summary Judgment Evidence are hereby **overruled** and **denied.** This action is hereby **dismissed with prejudice** as to Defendants Keith and Delta. This action is **dismissed without prejudice** as to Defendant Bryant. Judgment will be issued by separate document.